[No. 11275.  Department One.  February 6, 1914.]

MARY H. UHLBRIGHT, *Appellant*, v. GEORGE P. MULCAHY
et al., *Respondents.*[1]

FRAUD—EVIDENCE—SUFFICIENCY.  An action for fraud in the trade
of properties, by falsely representing that a mortgage for $1,000 con-
stituting part of the consideration was a first lien, cannot be sus-
tained, where abstracts of the properties were furnished to plain-
tiff's agent and retained by the plaintiff for three years without ob-
jection, and there was no evidence that the mortgages or personal
property taxes constituting alleged prior liens were executed by or
assessed against parties in the chain of title or having any interest
in the land.

LIMITATION OF ACTIONS—RELIEF ON THE GROUND OF FRAUD.  An
action for fraud in misrepresenting that a mortgage was a first
lien upon property cannot be maintained, where more than three
years had elapsed since the plaintiff had, pursuant to the contract,
received and retained abstracts of title to the property, an examina-
tion of which would have disclosed the falsity of the representations.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered January 8, 1913, dismiss-
ing an action for damages for fraud, upon granting a non-
suit.  Affirmed.

*W. B. Mitchell*, for appellant.

*Robinson & McHugh*, for respondents.

ELLIS, J.—The plaintiff, on July 22, 1912, brought this
action to recover damages in the sum of $1,000 and interest,
the amount for which she took a certain mortgage as part
consideration on exchange of real estate situated in Spokane
county, Washington, effected with the defendant George P.
Mulcahy on February 25, 1909.  The mortgage covered
certain real estate in the town of Kahlotus, in Franklin
county, Washington, was executed by the defendants Carl
Eiseman and wife to the defendant C. H. Paxson, and, by
Paxson, assigned, together with the note for $1,000 which

[1]Reported in 138 Pac. 314.

it secured, to the defendant Mulcahy, who, on March 13, 1909, in pursuance of the contract of exchange, assigned it and the note to the plaintiff.

The complaint alleged, in substance, first, that the defendant Mulcahy falsely, and with intent to defraud the plaintiff, represented "that this mortgage was a first mortgage, that the property which it covered was of the value of three thousand dollars ($3,000), and that it was bringing a rental value of, to wit, $50 per month;" and, second, that the defendants Paxson, Eiseman and Mulcahy, conspiring together, had caused the mortgage to be made without consideration and for the purpose of selling it, and thereby disposing of the property which it covered, knowing the property to be of little value. It was also alleged, in substance, that the title was not good in that the deed from Paxson, who formerly owned the land, was executed in blank and the name of some unknown person first inserted, and afterwards, about May 20, 1909, when the abstract of title furnished by the defendant to the plaintiff had been sent to Franklin county, brought down to date, and returned, it was discovered that there was no deed to Eiseman, the name of the unknown person was erased and Eiseman's name inserted as grantee. It was also alleged that there was a prior mortgage on the property, and that, since the transfer of the $1,000 mortgage to the plaintiff, the buildings on the mortgaged property have been destroyed by fire, and that the naked lots are not worth the taxes thereon. It was not alleged that defendant agreed to assign any insurance on the mortgaged property, or that there was, at the time of the transfer of the mortgage to the plaintiff, any taxes a lien against the property. It was alleged generally that the falsity of the alleged representations was not made known to the plaintiff until shortly before this action was commenced. The answer put in issue the material allegations of the complaint, and set up certain affirmative matters which are immaterial here.

The plaintiff introduced in evidence the contract, in which it was agreed that she exchange a certain 320 acres of land, valued at $15,000, giving good title, free from incumbrances, for certain lots in Spokane, occupied by an apartment house, valued at $22,000, subject to certain mortgages which the plaintiff assumed, the defendant Mulcahy to pay $1,750 cash and assign to plaintiff the mortgage for $1,000 on the Kahlotus lots and certain stocks. The contract provided that each party should furnish to the other abstracts of title to the respective properties, which it appears was done. It also provided that each party should pay to F. W. Mauser, the agent who negotiated the exchange, one-half of his commissions. The plaintiff also introduced in evidence certified copies of two mortgages upon the Kahlotus lots, both antedating the mortgage assigned to her, one for $412 from one Gohlson to one Gillick; the other, for $800 from one Hale to Washington Liquor Company of Spokane and Charles Kohn of Portland, Oregon, and a partial discharge of the latter mortgage releasing the interest of the liquor company. The plaintiff also introduced in evidence a statement of taxes against the Kahlotus lots, purporting to have been made by the treasurer of Franklin county, showing personal taxes for the years 1907 and 1908, charged against these lots, but offered no evidence as to who was the person against whom these taxes were assessed, or that they were assessed against any person who ever owned or had any interest in these lots. This statement showed the assessed valuation of the lots in 1911, after the fire, to be $150.

Both the plaintiff and her husband, who assisted her in her business matters, while not referring in terms to Mauser as their agent, stated that he looked after the transaction for them, and received all papers delivered for them in connection with the deal; that they depended upon him to see that the papers were correct; that he looked the papers over and said they were all right; and that they left the papers with him for safe keeping until a short time before this action

was commenced. There was no evidence that Mauser acted as agent for the defendant Mulcahy in this transaction other than the bare circumstance that the contract provided that the defendant should pay one-half of Mauser's commission.

Mauser testified that the abstract of the Kahlotus lots was delivered either to him or to Uhlbright and left with him; that he sent it to Franklin county to be brought down to date; that it was returned about May 20, 1909; that he then discovered that the deed from Paxson did not run to Eiseman; that he called Eiseman's attention to that fact; that Eiseman seemed surprised, said that he would have it corrected, took the deed, and returned it the next day with his own name inserted as grantee; that Mauser accepted this as a sufficient correction of title and never said anything to the defendant Mulcahy about the matter, but did mention it to Uhlbright at the time. Mauser also testified that, when the papers were delivered to him for Uhlbright, there were among them several releases of mortgages, and he would not say that there was not among these papers a release of the mortgage from Gohlson to Gillick. Both the plaintiff and her husband testified that Mulcahy represented that the mortgage was a first mortgage on the Kahlotus property; that the property was worth $3,000 and was renting for about $50 a month. Mauser testified that the mortgage was "rated as a first mortgage," and that "as near as I can recollect it was represented that it was a building occupied by a saloon that was renting somewhere between forty and fifty dollars a month; I don't recollect that there was anything said in reference to the valuation." No evidence whatever was offered as to the value of the Kahlotus property at the time of the transfer of the mortgage, nor any evidence that it was not then renting for $50 a month. No evidence whatever of the alleged conspiracy was offered.

The court granted a nonsuit, holding the action barred by the three-year statute of limitations. The plaintiff appeals.

The judgment must be affirmed, for two reasons; first, because there was not sufficient evidence that the mortgage in question was not a first mortgage; and, second, because, in any event, the appellant and her agent either knew, or ought to have known, of every fact now relied upon for a recovery as early as May 20, 1909, when the completed abstract was furnished for their examination; and the action is therefore barred by the statute.

It is elementary that one asserting fraud as a ground of action must, in order to maintain the action, prove the fraud by clear and convincing evidence. It is clear that no such proof was either made or offered in this case. No effort was made to prove that the property was not worth the sum represented, or that it was not bringing in the rental represented. The only attempt to prove that the alleged representations were false was the effort to show that Eiseman, the mortgagor, had no title and that there were prior mortgages upon the land. The evidence makes it too plain for cavil that Mauser was, throughout the whole transaction, the authorized agent of the appellant and that an abstract was furnished to him for the appellant; that he did discover the first defect mentioned and had it corrected to his and the appellant's satisfaction without ever mentioning the matter to the respondent. It is equally clear that, if there were, in fact, prior unreleased mortgages upon the property, this also could have been discovered at the same time and from the same abstract. There could be no other purpose for requiring the abstract on the one hand, and furnishing the abstract on the other, except to advise the appellant as to the facts touching the title. Having retained the abstract for over three years, she cannot now be heard to say that she did not know what it contained. If, as now claimed, the respondent had meant to represent that the mortgage was a first mortgage as a positive statement of facts, with knowledge that the plaintiff was accepting it as such, it is hardly conceivable that he would have furnished the abstract which,

if the statement was not true, would have shown its falsity. Having failed to examine the abstract or have it examined, the appellant must be charged with the knowledge which such an examination would have disclosed.

Moreover, the evidence wholly failed to disclose that there are any mortgages subsisting as valid liens on the property prior to the appellant's mortgage. Neither the abstract in question nor any chain of title, nor even oral testimony of any one who had examined the title or the records in the auditor's office, was offered to show that the persons who made the alleged prior mortgages ever had any interest in the mortgaged property, or that these mortgages had not been released, or that the debts which they purported to secure had not been paid. Giving to the evidence its widest probative force, it showed no more than that two mortgages were, at some time prior to the transaction here in question, executed by persons not shown to have any interest in the mortgaged property. To hold that this evidence was sufficient to shift the burden of proof so as to require the respondent either to show that the persons making these mortgages never had any interest in the land, or that the mortgages had been released of record, or that the mortgage debts were paid, would be equivalent to holding that every person charged with fraud must take the burden of disproving the charge, thus reversing the rule that, where fraud is charged it must be proved by clear and convincing evidence.

The same considerations make it plain that the statement as to the personal taxes was not such evidence of a prior lien upon the property as to establish fraud or misrepresentation on the respondents' part in representing that the mortgage was a first mortgage. It was incumbent upon the appellant to show that these personal taxes were assessed against some person owning the land at the time they were assessed, and charged against the property. These things were all matters which could have been shown from the records of Franklin county. No effort was made to show them.

We are constrained to hold that, when fraud is charged, something more than matters sufficient to raise a suspicion of fraud must be proven before a defendant shall be required to assume the burdens of disproving the fraud charged.

We have confined ourselves to a discussion of the evidence since the principles of law involved are so elementary as to require nothing more than a simple statement. In any view of the matter, the nonsuit was properly granted.

The judgment is affirmed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.